UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. SI4:05CR280ERW(MLM) |
| ) | |
| MICHAEL SMITH and ) | |
| RONDA LONG, ) | |
| Defendants. ) | |

**REPORT AND RECOMMENDATION**
<u>**OF UNITED STATES MAGISTRATE JUDGE AS TO**</u>
<u>**MICHAEL SMITH AND RONDA LONG**</u>

This matter is before the court on the Motions to Suppress Evidence and Statements filed by Michael Smith and Ronda Long.[1] Based on the testimony and evidence adduced and having had an opportunity to observe the demeanor and evaluate the credibility of the witnesses, the undersigned makes the following findings of fact and conclusions of law.

**1.    Michael Smith**

<u>**Findings of Fact**</u>

Gerald A. Williams has been a deputy sheriff in the Jefferson County Sheriff's Department for six years. For the past two years he has been detached to the DEA Drug Task Force. He has received training in the identification of controlled substances and the methods of operation of drug traffickers.

In approximately November, 2004, he began his participation in an investigation into methamphetamine coming from California to the Park Hills, Missouri area. He spoke to Carolyn Mayberry, a co-defendant in this case, who agreed to cooperate. She gave information about who received the methamphetamine and she agreed to proactive cooperation by permitting her phone calls and in-person contacts to be recorded. She named defendant Michael Smith as one of the persons involved in the organization. Between April, 2005, and July 28, 2005, numerous calls

---

[1] This Report and Recommendation excludes the Title III wiretap utilized in this case. All of the wiretap issues are dealt with in a separate Report and Recommendation.

between Carolyn Mayberry and defendant Michael Smith were recorded. In addition, in-person contacts between Carolyn Mayberry and defendant Michael Smith were recorded. These recordings were made with Carolyn Mayberry's knowledge and voluntary consent. No threats were made to force her to cooperate or to allow the recordings. No promises were made to induce her to do so. TFO Williams told Carolyn Mayberry he would make her cooperation known to the prosecutor but did not promise her any form of leniency. She was not offered or promised any remuneration for her cooperation; no remuneration was ever discussed and she did not anticipate any payments. However, after the recordings were made, she was paid approximately $1,500 for moving expenses because she feared for her safety if her cooperation and location were known to the co-defendants in this case.

On June 8, 2005 an undercover operation, known as a "reversal," occurred. A one pound package of methamphetamine was sent by Ronald Kinney, Jr. in California to Carolyn Mayberry in Park Hills. As part of the undercover operation, the Drug Task Force actually supplied the purchase money for this package. After the one pound package was delivered, they agreed on a second shipment from Ronald Kinney, Jr. to Carolyn Mayberry which was to be a three pound package of methamphetamine. Carolyn Mayberry told defendant Michael Smith she was expecting the three pound package from Ronald Kinney, Jr. In a recorded call she advised him the package had arrived and they arranged where they should meet for defendant Michael Smith to pick it up. Carolyn Mayberry voluntarily consented to the recording of this call. The Task Force Officers prepared a "sham" three pound Federal Express package, similar to those used by the organization in the past. Carolyn Mayberry and defendant Michael Smith were to meet at an apartment complex in Park Hills. During surveillance of the area, the officers observed defendant Michael Smith driving to the apartment complex and meeting with Carolyn Mayberry. She turned over the sham package to him and their conversation was recorded. Afterwards, surveillance observed defendant Michael Smith drive away. The surveillance team gave all of this information to Officer Richard McFarland of the Park Hills Police Department who then stopped defendant Michael Smith's

vehicle and placed him under arrest.[2]  The Federal Express package was retrieved from the floorboard of defendant Michael Smith's vehicle.

### Conclusions of Law

The Federal Wiretap Statute regulates the interception of wire, oral and electronic communications.  18 U.S.C. § 2510-22 (2000).  It is not unlawful to intercept such a communication if a party to the communication has given prior consent.  18 U.S.C. § 2511(2)(c).  Nor does such an interception violate the Fourth Amendment.  United States v. Corona Chavez, 328 F.3d 974 (8th Cir. 2003) citing United States v. Gomez, 900 F.2d 43, 44 (5th Cir. 1990).  The government has the burden of proof on the issue of consent.  Corona Chavez 328 F.3d at 978; Gomez, 900 F.2d at 44.  Consent to interception of a telephone call may be inferred from knowledge that the call is being monitored.  United States v. McMillan, 508 F.2d 101, 104 n.2 (8th Cir. 1974) ("[I]t will normally suffice for the government to show that the informer went ahead with a call after knowing what the law enforcement officers were doing."), cert. denied, 421 U.S. 916 (1975).

It is well-established that a law enforcement agent or an informant may *record* conversations between himself/herself and another party without violating the Fourth Amendment or any other law.  See United States v. Sileven, 985 F.2d 962 (8th Cir. 1993); United States v. White, 401 U.S. 745, 752 (1971). 18 U.S.C. § 2511(2)(c).  Thus the recorded statements were lawfully obtained and are admissible in evidence if otherwise qualified.

It is also clearly established that Fourth Amendment rights are not violated when conversations with a government informant are electronically *monitored* by a government agent with the consent of the informant.  Lewellen v. Raff, 843 F.2d 1103, 1116 (8th Cir.

---

[2] Later, at the Park Hills Police Department, defendant Michael Smith was advised of his Miranda Rights, executed a Warning and Waiver Form and elected not to make a statement.

- 3 -

1988), cert. denied, 489 U.S. 1033 (1989); United States v. McMillan, 508 F.2d 101, 104 (8th Cir. 1974), cert. denied, 421 U.S. 916 (1975).

In the present case, it is clear that the government has met its burden on the issue of consent. The cooperator, Carolyn Mayberry, worked with the police from April through July, 2005, and made numerous recorded calls and recorded in-person encounters. TFO Williams testified unequivocally that she voluntarily consented, was not threatened or coerced and no promises of any kind were made to her. This testimony is uncontested. The recorded calls and the recorded in-person conversations should not be suppressed.

Law enforcement officers may arrest a person without a warrant if they have probable cause to believe that the person has committed or was committing a crime. Gerstein v. Pugh, 420 U.S. 103 (1975); United States v. Watson, 423 U.S. 411 (1976). Probable cause for arrest exists if at the time of the arrest the facts and circumstances within the knowledge of the officers and of which they had reasonable trustworthy information were sufficient to warrant a prudent man in believing that the person had committed or was committing an offense. Beck v. Ohio, 379 U.S. 89, 91 (1964). See also R.S.Mo § 544.216 (a municipal law enforcement officer may arrest on view without a warrant any person about whom he has reasonable grounds to believe has violated any law of this state).

An arresting officer need not have personal knowledge of the facts supporting a probable cause determination. See, United States v. Hensley, 469 U.S. 221, 230-33 (1985) (reliance on a flyer or bulletin, issued on the basis of articulable facts supporting a reasonable suspicion that the wanted person has committed an offense, justifies a stop); Whiteley v. Warden, 401 U.S. 560, 568 (1971) (radio report of outstanding arrest warrant justifies an arrest by officer in another locality); United States v. Riley, 927 F.2d 1045, 1059

- 4 -

(8th Cir. 1991) (officers may rely on information received from other officers in another locality); United States v. O'Connell, 481 F.2d 1408, 1419 (8th Cir.) (officers may share relevant knowledge which informs the decision to seize evidence or detain a particular person), cert. denied, 487 U.S. 1210 (1988).

Here, Officer McFarland had received the information from the Task Force Officers and was entitled to rely on it to stop defendant Michael Smith and place him under arrest.

The arrest of defendant Michael Smith was lawful.

2.   **Ronda Long**

**Findings of Fact**

On July 28, 2005 defendant Long was arrested on the Indictment in this case. At the time of her arrest, certain items were seized. Defendant does not contest the seizure of these items.

Officer Mike Rigel testified that he is a lieutenant detective with the Park Hills Police Department. He has been with the Department for thirteen years and detached to the DEA Drug Task Force for one year. He has training in the identification of controlled substances and the methods of operations of drug traffickers.

From November, 2004 through July, 2005 he was part of an investigation involving methamphetamine shipped from California to Park Hills.

On September 28, 2005 pursuant to an Indictment by a Federal Grand Jury, defendant Ronda Long was arrested. Following her arrest she was transported to the Park Hills Police Department. TFO Rigel saw her there and at that time she was distraught and crying. He then transported her about one hour and ten minutes to the DEA Office in St. Louis. They had no conversation in the car.

At DEA Headquarters she was placed briefly in a cell while others were interviewed. She was then taken to an interview room and presented with a DOJ "Statement of Rights and Waiver." Gov.Ex.4. TFO Rigel read the form to her and she followed along. He checked both of the boxes by "I have read" and "had read to me" in the Waiver section. It is dated 7/28/05 at 1:05 P.M. The Rights portion of the form states:

> Before we ask you any questions, you must understand your rights. You have the right to remain silent. Anything you say can be used against you in court or other proceedings. You have the right to talk to a lawyer for advice before we ask you any questions, and to have him with you during questioning. You have this right to the advice and presence of a lawyer even if you cannot afford to hire one. In such a case you have a right to have a court-appointed attorney present at the interrogation. If you wish to answer questions now without a lawyer present, you have the right to stop answering questions at any time. You also have the right to stop answering at any time until you talk to a lawyer.
>
> You may waive the right to advice of counsel and your right to remain silent and answer questions or make a statement without consulting a lawyer if you so desire.
>
> The Waiver portion states: [I have read] [had read to me] the statement of my rights shown above. I understand what my rights are and I elect to waive them. I am willing to answer questions and make a statement. I do not want a lawyer. I understand and know what I am doing. No promises or threats have been made to me and no pressure of any kind has been used against me . . .

Defendant Ronda Long signed the form at the bottom of page one. In addition, TFO Rigel testified that no coercion or threats were made to force her to make a statement and no promises were made to induce her to do so.

The top of page two of the form states:

Statement of [Ronda Jane Long] made in the presence of (S/A TFO) [TFO Mark Rigel] and [TFO Hofer] of the Drug Enforcement Administration.
I [Ronda Jane Long], make the following free and voluntary statement to the above officers who have identified themselves to me as Special Agents and/or Task Force Officers of the Drug Enforcement Administration. No force has been used, no threats or promises have been made to me in order to obtain this statement.

TFO Rigel testified defendant Long said she did not know where to begin and he told her to start at the beginning. He said he did not tell her what to write. She asked what all was being requested of her in her statement and TFO Rigel told her "everything." He said to put down the "who, what, when, where, why and how." Defendant Long then made a one and one half page statement in her own handwriting.

Counsel for defendant cross-examined TFO Rigel extensively, very extensively, about defendant Long's statement. Among other extraneous information he elicited that TFO Rigel did not ask defendant Long if she had ingested methamphetamine or marijuana that day or the day before and that he did not know whether or not she had been up for the previous four days. He had seen defendant Long with her significant other, Daniel McIntyre, (know as "Opie") whom he met in Columbia Park in Park Hills a couple of years before in connection with another case. He also went to school with McIntyre in junior high school. Defendant, TFO Rigel, and TFO Stephan Steen were present in the interview room. TFO Williams was in and out.

At no time did TFO Rigel tell defendant Long what to write. He specifically testified he did not tell her to use the word "sold" in regard to the crystal methamphetamine nor did he give her the name of Ronald Kinney. DEA Headquarters has the equipment to record audio and/or video statements, however, this was not done. On re-direct TFO Rigel testified defendant Long did not appear overly tired. She was not yawning or exhibiting other signs of tiredness. She did not doze off on the one hour and ten minute ride to St. Louis. She did not appear to be under the influence of drugs of any kind. She walked to and from TFO Rigel's car without anything suspicious about her gait. Her speech was normal and not slurred nor did she give any other indication she was under the influence of drugs.

## Conclusions of Law

A defendant may knowingly and intelligently waive her rights and agree to answer questions. <u>Miranda v. Arizona</u>, 384 U.S. 436, 479 (1966). When the prosecution seeks to introduce in evidence a statement made by a defendant while in custody, it has the burden of showing by a preponderance of the evidence that the statement was made after a voluntary, knowing and intelligent waiver of the <u>Miranda</u> rights by the defendant. <u>Colorado v. Connelly</u>, 479 U.S. 157 (1986). "The requirement that <u>Miranda</u> warnings be given does not, of course, dispense with the voluntariness inquiry" <u>Dickerson v. United States</u>, 530 U.S. 428, 444 (2000). The court must look to the totality of the circumstances surrounding the interrogation to determine whether the waiver was the product of a free and deliberate choice, rather than intimidation, coercion, or deception; and whether the waiver was made with an awareness of the right being abandoned and the consequences of the decision to abandon it. <u>Moran v. Burbine</u>, 475 U.S. 412 (1986).

The statement must be voluntary and not the product of any police conduct by which the defendant's will is overborne. <u>Haynes v. Washington</u>, 373 U.S. 503 (1963); <u>Colorado v. Connelly,</u> 479 U.S. at 170. However, as the Supreme Court stated in <u>Berkemer v. McCarthy</u>, 468 U.S. 420 (1984), "[c]ases in which a defendant can make a colorable argument that a self-incriminating statement was 'compelled' despite the fact that law enforcement authorities adhered to the dictates of <u>Miranda</u> are rare." <u>Id.</u> at 433 n. 20; <u>Dickerson</u>, 530 U.S. at 444. <u>See</u> also <u>United States v. Turner</u>, 157 F.3d 552, 555 (8th Cir. 1998) (finding knowing and intelligent waiver where defendant "reviewed and initialed each admonition on the Waiver form, agreed to answer questions and gave accurate information.")

Clearly this is not one of the "rare" cases to which <u>Berkemer</u> refers. There is no evidence that defendant Long's will was overborne. The court finds that the numerous "suggestions" in the cross-examination about defendant's alleged impairment do not have support in the record. Defendant Long was advised of her rights, waived them and made a written statement in her own handwriting. Gov.Ex.4. Her statement was voluntary and should not be suppressed.

Accordingly,

**IT IS HEREBY RECOMMENDED** that defendant Michael Smith's Motion to Suppress Evidence and Statements be **DENIED**. [Doc. 162]

**IT IS FURTHER RECOMMENDED** that defendant Ronda Long's Motion to Suppress Statements and Evidence Obtained as a Result of Said Statements be **DENIED**. [Doc. 175]

The parties are advised that they have eleven (11) days in which to file written objections to this report and recommendation pursuant to 28 U.S.C. §636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. <u>See</u> <u>Thompson v. Nix</u>, 897 F.2d 356 (8th Cir. 1990).

<u>/s/Mary Ann L. Medler</u>
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE

Dated this  3rd  day of November, 2005.